IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| RICKY VALENTEE SPIGNER, ) | CIVIL ACTION NO. 9:15-2828-TMC-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on March 23, 2010, alleging disability beginning May 26, 2006, due to problems with his left shoulder, right wrist, and left ankle/foot; hypertension; and high cholesterol. (R.pp. 286, 310). Plaintiff later amended his onset date to February 19, 2010. (R.pp. 13, 88).[1] Plaintiff's claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on April 19, 2012. (R.pp. 83-116). The ALJ thereafter denied Plaintiff's claim in a decision

---

[1] Plaintiff had filed a prior application on February 4, 2008, which was denied. (R.p. 13). Plaintiff's amended onset date of February 19, 2010, is the day after the date of the last denial. (R.p. 88).



issued May 24, 2012. (R.pp. 173-182). However, the Appeals Council granted Plaintiff's request for review, and remanded the case for a new decision. (R.pp. 187-190).

A second hearing was then held before a different ALJ on December 10, 2013. (R.pp. 117-143). That ALJ thereafter denied Plaintiff's claim in a decision issued January 23, 2014. (R.pp. 13-24).[2] This time the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-4).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that the ALJ's decision is not supported by substantial evidence, and that this case should be remanded to the Commissioner for further proceedings. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct**

---

[2]As part of his decision, The ALJ specifically noted that there was no basis for reopening the prior application. (R.p. 13).



2

> **a verdict were the case before a jury, then there is "substantial evidence."**
> [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Plaintiff's Medical Records

On March 23, 2010 (the month following Plaintiff's amended disability onset date), Dr. Michael E. Tollison evaluated Plaintiff's complaints of pain in his right foot and ankle stemming from a May 2006 accident in which he (while on the job as a sanitation worker) was hit by a car. It was noted that Plaintiff had also undergone surgery on his left ankle in 2007. Plaintiff reported pain at rest which worsened after a lot of activity, which was in turn alleviated with rest and elevation. On examination Plaintiff had no significant clonus in his lower extremities; intact sensation; negative straight leg raise testing; plantigrade feet with some valgus, but no clawtoes; protected gait on the left; global pain in his left ankle with stress testing, but with no gross instability; and neuralgic pain in his anterior ankle and thickening in his ankle and foot, but with no evidence of portal area nerve entrapment. Plaintiff's left ankle and hindfoot motion was somewhat decreased compared to the right, his left ankle did not dorsiflex to neutral with his knee straight, and his hindfoot was limited



with some limitation in the transverse tarsal joint. There was no motor loss, gross instability, or crepitance. Dr. Tollison diagnosed Plaintiff with chronic left ankle and hindfoot from his 2006 injury, limited left ankle and hindfoot motion, Achilles tightness, and anterior ankle neuralgia. He suggested a custom brace, suspected surgery would not help, and found that Plaintiff was limited in standing and walking. (R.pp. 386-387, see R.pp. 123-124).

On May 12, 2010, Dr. Woodrow Bell at Richland Community Healthcare noted that Plaintiff's hypertension was controlled and ordered diagnostic tests for Plaintiff's complaints of right-sided abdominal pain. (R.pp. 390-391). On May 26, 2010, Plaintiff reported that his right-side pain worsened with prolonged standing or walking and was relieved with sitting. Dr. Bell adjusted Plaintiff's medications and referred Plaintiff to an ENT for a jaw mass. (R.pp. 392-393). On June 23, 2010, Dr. Bell noted that Plaintiff had right lower quadrant tenderness and referred Plaintiff for a general surgery consultation. (R.pp. 394-395).

In July 2010, a left shoulder x-ray showed sclerosis suggesting impingement. Left ankle x-ray showed some degenerative changes, but no acute fracture. An x-ray of Plaintiff's left foot indicated mild osteoarthritic changes involving the first metatarsal phalangeal joint and a prominent calcaneal spur at the plantar fascia insertion, but no acute fracture. (R.pp. 396, 430-431).

Dr. Vasant L. Garde performed an orthopedic consultative examination on July 20, 2010, which revealed that Plaintiff walked with a normal gait and satisfactory pace from the waiting room to the examination room with no assistive device; could heel-toe walk; could squat; had minimal weakness in his left leg, with strength 4+/5; and had essentially normal range of motion, except for five degrees of limitation in dorsiflexion at Plaintiff's left ankle. Plaintiff also had full grip



strength in both hands with no difficulties with fine or gross manipulation, normal reflexes, no joint abnormality, and (despite Plaintiff's complaints of numbness) no sensory loss. (R.pp. 398-403).

On July 26, 2010, state agency psychologist Edward Waller opined that Plaintiff had a learning disability that resulted in a mild restriction in his activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. Dr. Waller noted that Plaintiff's school records at age sixteen revealed IQ scores of Verbal 83, Performance 94, and Full Scale 87, although Plaintiff's reading and spelling were at a second grade level and Plaintiff attended resource classes for reading. (R.pp. 404-417). Separately, state agency physician Lindsey Crumlin opined in July 2010 that Plaintiff could perform a range of light work with lifting and/or carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking about six hours in an eight-hour workday; sitting about six hours in an eight-hour workday; occasional use of left foot pedals; occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; and occasional balancing, stooping, kneeling, crouching, and crawling. (R.pp. 418-430).

On July 30, 2010, Plaintiff was evaluated by physical therapist Tracy Hill of Columbia Rehabilitation Clinic, Inc., who noted that Plaintiff's left ankle range of motion was limited. Ms. Hill thought that Plaintiff's lifting abilities limited him to a range of light to medium work, with occasional walking, stair climbing, kneeling, bending, and twisting and reaching. She noted that Plaintiff was not able to tolerate occasional squatting. Plaintiff's self-reported tolerances were 120 minutes for sitting, fifteen minutes for standing, and twenty minutes for standing/walking. Observed maximal times were twenty minutes for sitting, twelve minutes for standing, and twenty-two minutes for standing/walking. Ms. Hill opined that although Plaintiff's lifting ability restricted him to a range



of light to medium work, he was better qualified for a range of sedentary to light work secondary to his limited standing/walking abilities. (R.pp. 473-480).

On August 23, 2010, Ms. Cynthia P. Grimley, M.S., conducted a vocational and earning capacity evaluation. Plaintiff reported he graduated from high school, but attended special education classes in a contained classroom because of his reading disability. He had a driver's license, and his activities included watching television and occasionally going fishing. Wide Range Achievement Test results indicated a 1.1 grade equivalent in word reading, K.6 in sentence comprehension, 1.4 in spelling, and 12.9 in math computation. Ms. Grimley found that Plaintiff had a learning deficit in reading, spelling, and sentence comprehension, but had average intelligence and math skills. She opined that Plaintiff's employability was diminished due to significantly restricted labor market access, he had academic barriers, and he was not considered competitively employable. (R.pp. 482-491).

Dr. Tollison examined Plaintiff again on October 29, 2010 for complaints of pain. Examination revealed plantigrade feet with some valgus, but no clawtoes; protected gait on the left; global left ankle pain with stress testing, but no instability; less neuralgic pain than before; and no evidence of portal area nerve entrapment, but thickening at the ankle and foot. Left ankle and hindfoot motion was limited, there was mild equinus, and there was some limitation in the transverse tarsal joint. Plaintiff had no motor loss, gross instability, or crepitance. X-rays revealed heterotopic sysdemotic ossification as well as mild medial ankle and lateral calcaneocuboid spurring. Dr. Tollison saw no surgical indications and prescribed an Arizona brace. (R.pp. 428-429).

On January 4, 2011, state agency psychologist Dr. Anna P. Williams affirmed Dr. Waller's July 26, 2010 opinion. (R.pp. 432). On January 26, 2011, state agency physician Dr. James



Weston opined that Plaintiff could perform a range of light work with lifting and/or carrying twenty pounds occasionally and ten pounds frequently; sitting for six hours in an eight-hour workday; standing/walking for six hours in an eight-hour workday; occasional use of left foot pedals; and occasional climbing of ramps/stairs, stooping, kneeling, and crouching; frequent balancing; and no climbing of ladders, ropes, or scaffolds. (R.pp. 433-440).

On May 2, 2011, Plaintiff was examined by Dr. M. Todd Crump for right-sided pain since the 2006 accident. Dr. Crump noted muscle spasms, prescribed Flexeril, and ordered an ultrasound of a mass under Plaintiff's chin. (R.pp. 537-539).

On June 10, 2011, Dr. Christopher G. Mazoue of The University of South Carolina School of Medicine, Department of Orthopedic Surgery, examined Plaintiff for left shoulder pain into his neck with some radicular symptoms. Plaintiff had good active range of motion in his spine and upper extremities (including his left shoulder). Upper extremity strength (including Plaintiff's shoulders), sensation, and pulses were intact, and his reflexes were grossly symmetrical. Plaintiff had mild discomfort with external impingement signs on his left shoulder, and mild discomfort over his left AC joint. Radiographs indicated very mild degenerative changes of Plaintiff's left AC joint, and some early degenerative joint disease in his neck. Dr. Mazoue suggested that Plaintiff have a cervical spine MRI.[3] (R.p. 578)

Dr. Crump treated Plaintiff for various conditions from July to December 2011, including uncontrolled hypertension, and complaints of flank and abdominal pain (which were later diagnosed as an umbilical hernia and repaired). Plaintiff's blood pressure was high in November

---

[3]Plaintiff had a cervical spine MRI in February 2013 (which revealed very mild to moderate canal stenosis), but that was well over a year after Plaintiff's date last insured. (R.pp. 582-583).



2011, but it was noted that Plaintiff had stopped taking his blood pressure medications because he felt they were too strong. (R.pp. 549-553, see R.p. 576).

**Discussion**

Plaintiff was forty-six years old on his alleged onset date of disability, and forty-eight years old on his date last insured of December 31, 2011. Although he has trouble reading and writing, he did receive a high school diploma. He has past relevant work experience as a sanitation worker, warehouse worker, loader/unloader, and shipper. (R.pp. 22, 23, 286, 312).

In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[4] of degenerative joint disease, hypertension, and a learning disorder (R.p. 16), he nevertheless retained the residual functional capacity (RFC) to perform light work,[5] restricted to lifting or carrying of eleven to twenty pounds more than occasionally; lifting or carrying of nine pounds or less more than frequently; standing and/or walking for more than fifteen minutes without

---

[4]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

[5]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

8



interruption; standing and/or walking in combination for two hours or more in an eight-hour workday; squatting; climbing of ladders, ropes, or scaffolds; pushing or pulling with either hand; reading of written instructions; or more than occasional kneeling, twisting, bending, reaching, climbing stairs, or operation of foot controls with his left foot. (R.p. 19). At step four, the ALJ found that Plaintiff could not perform any of his past relevant work with these limitations. (R.p. 22). However, the ALJ obtained testimony from a vocational expert (VE) and found at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy with these limitations, and was therefore not disabled during the period at issue. (R.pp. 19-20).

Plaintiff asserts that in reaching this decision, the ALJ erred because the medical-vocational guidelines (also known as the "Grids") direct a finding of "disabled", and becaue the ALJ failed to properly evaluate his mental impairment. After careful review and consideration of the record in this case and the arguments presented, the undersigned is constrained to agree with the Plaintiff that the ALJ's evaluation of his mental impairment in the decision cannot be upheld in light of the applicable case law (albeit in part for a different reason than argued by the Plaintiff), thereby requiring reversal of the decision.

**I**

Plaintiff contends that where there is a mental impairment, the ALJ is required to perform a Psychiatric Review Technique (PRT) analysis pursuant to 20 C.F.R. § 404.1520a, and is required to document the application of the technique. Plaintiff argues that the ALJ failed to properly



document the PRT technique as required by the regulations and by the remand order of the Appeals Council (in violation of 20 C.F.R. § 404.977(b)).[6]

At steps two and three of the sequential evaluation process, adjudicators are required to assess an individual's limitations and restrictions from a mental impairment or impairments pursuant to the psychiatric review technique described in 20 C.F.R. § 404.1520a and summarized in the PRT Form, in categories identified in the "paragraph B" and "paragraph C" criteria of the Commissioner's adult mental disorders listing in § 12.00 of the Listing of Impairments, found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See SSR 96-8p. The Commissioner uses the "paragraph B" criteria to measure the severity of medically determinable mental impairments according to the functional limitations they impose. See 20 C.F.R. pt 404, subpt P., app. 1, § 12.00(c). This technique requires the ALJ to consider and rate the claimant's limitations in four functional areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). SSR 96-8p provides that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment, but instead are used to rate the severity of mental impairment(s) at steps two and three. That ruling also explains that the mental RFC used at steps four and five requires a more detailed assessment by itemizing various

---

[6]The regulations provide that upon remand the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). In its remand order after the ALJ's decision in May 2012, the Appeals Council specifically stated that upon remand the ALJ would:

> Further evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of he functional areas described in 20 CFR 404.1520a(c).

(R.p. 189).



functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings and summarized on the PRT Form. See SSR 96-8p. Additionally, POMS § DI24510.065(B)(1)(d) provides that severity ratings, such as those noted above, do not describe function and do not usefully convey the extent of capacity limitations. Finally, the ALJ is also required to document, in writing, how the "special technique" was applied in evaluating an individual claimant. 20 C.F.R. § 404.1520a(e). The written decision "must incorporate the pertinent findings and conclusions based on the technique" and "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(2).

Here, it is unclear from the ALJ's decision that he properly employed the PRT technique. The ALJ summarized Plaintiff's medical record on pages 4-7 (R.pp. 16-19) of his decision. Then, at step three, the ALJ referenced his Findings 3 (severe impairment determination) and 5 (RFC and credibility determinations), and stated that Plaintiff's mental impairment (learning disorder) imposed mild restrictions as to activities of daily living and social functioning; moderate restrictions as to concentration, persistence, or pace; and no episodes of decompensation of extended duration. However, he provides no explanation for these findings other than that Plaintiff's "reading deficit can reasonably be expected to adversely impact concentration, persistence, or pace related to tasks requiring reading abilities." (R.p. 19). The ALJ appears to explain in Finding 3 that Plaintiff has shown that he has a learning disability and reading deficits (and that this learning disability was a severe impairment) based on documentation from an earlier decision indicating that Plaintiff had significant reading and spelling disabilities and was in resource classes for the learning disabled, and based on Ms. Grimley's August 2010 testing that indicated Plaintiff had "significant learning deficits



in reading, spelling, and sentence completion." (R.p. 19). However, nothing in this discussion explains the ALJ's findings as to Plaintiff's restrictions in the four areas.

As for Finding 5, the only restriction that the ALJ appears to have found as to Plaintiff's mental RFC is that Plaintiff cannot perform work requiring "reading of written instructions." (R.p. 19). In doing so, the ALJ stated that no weight was being given to Ms. Grimley's opinion (even though it had previously been referred to as part of the rationale for Finding 3) "because it is based, in part, on consideration of hireability, employer hiring practices, and job availability all of which are irrelevant to consideration of disability under the Social Security Act (20 C.F.R. § 404.1566)." (R.p. 21). The ALJ also stated that the July 2010 and January 2011 opinions of the state agency psychological consultants were only being given "limited weight" because:

> They did not consider the impact of the claimant's limited reading skills upon his ability to comprehend written instructions or how that would affect his functional capacity. The consultants also did not have the assessment and test results performed by Ms. Grimley in August 2010, which showed significant reading/spelling deficits and was [sic] not submitted into evidence until the hearing level.

(R.p. 21).

However, as the ALJ gave no weight to Ms. Grimley's opinion and limited weight to the state agency mental impairment opinions, it is unclear from the ALJ's discussion how he then reached his findings as to the limitations in the four functional areas in light of Plaintiff's severe learning disorder. Further, in his Finding 4 discussion, the ALJ only discussed Plaintiff's reading deficit and does not discuss Plaintiff's learning disability as a whole, including deficits in spelling or sentence completion.[7]

---

[7]The VE identified two jobs that Plaintiff could perform; (R.p. 140); both of which require the writing ability to "[p]rint simple sentences containing subject, verb, and object, and series of
(continued...)



Therefore, this action should be reversed and remanded for the ALJ to perform a proper PRT analysis and explain how he reached his findings in the four functional areas. See 20 C.F.R. § 404.1520a; SSR 96-8p.

**II**

Additionally, although the ALJ found that Plaintiff had moderate restrictions with respect to concentration, persistence, or pace, he failed to properly account for this restriction in his RFC determination. As noted above, after finding that Plaintiff's learning disorder was a severe impairment, the only restriction the ALJ assigned regarding Plaintiff's mental RFC was that Plaintiff could not perform work requiring reading of written instructions. (R.pp. 16, 19). The ALJ included no other restrictions to account for Plaintiff's moderate limitation in concentration, persistence or pace, which the ALJ also found; (R.p. 19); nor did he otherwise address this issue in his hypothetical to the VE. (R.pp. 139-140). While the ALJ did restrict Plaintiff to "unskilled" work, even if this was intended to account for Plaintiff's moderate mental limitation in this functional area, in a case decided after the ALJ's decision, Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit held that "an ALJ does not account 'for a claimant's [moderate] limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Mascio, 780 F.3d at 638, quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011).[8]

---

[7](...continued)
numbers, names, and addresses." Dictionary of Occupational Titles, Nos. 731.685-014 and 739.684-094. However, at the hearing in conjunction with his previous application for benefits [the documentation for which the ALJ indicated had been relied on in his decision (R.p. 19)], Plaintiff testified that he could barely write, and that he could "not really" write more than his name and address, and was unable to read a newspaper or magazine. (R.pp. 45-46).

[8]The undersigned notes that, previously, restricting a claimant to routine, simple work to
(continued...)



Rather, the ALJ must address the Plaintiff's ability to "stay on task", which is the limitation that "would account for a . . . limitation in concentration, persistence or pace". Id.

The ALJ did not address this limitation (to "stay on task") in either his RFC or in his hypothetical to the VE. Cf. Mascio, 780 F.3d at 638 [commenting that "[n]otably, the hypothetical [to the VE] said nothing about [Plaintiff's] mental limitations"]; Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989) [In order for a vocational expert's opinion to be helpful and relevant, it must be "in response to proper hypothetical questions which thoroughly set out all of claimant's impairments"]; Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) [hypothetical question submitted to the VE must state the claimant's impairments with precision]. Although the ALJ did assign a limitation as to reading, such a limitation does not appear to take into account any inability "to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3);[9] cf. Tyler v. Colvin, No. 1:15CV225, 2016 WL 831944 (M.D.N.C. Feb. 29,

---

[8](...continued)
account for mental impairments, to include a moderate restriction with respect to concentration, persistence or pace, is an RFC formula that had found support in previous case law, and which this Court had itself upheld as sufficient in some earlier decisions. Cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [Finding that by restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; McDonald v. Astrue, 293 F. App'x 941, 946-47 (3d Cir. 2008) [noting that the ALJ properly accounted for his finding that the claimant had moderate limitations in concentration by limiting him to simple, routine tasks]. After Mascio, however, such a summary finding is no longer sufficient, as the Fourth Circuit has held that the ability to perform simple, routine tasks is not the same as having the ability to *stay on task* during a workday, which is the limitation that would account for a claimant's impairment in concentration, persistence or pace. Mascio, 780 F.3d 638.

[9]Listing 12.00 explains, in part:

(continued...)



2016)[Finding that "[t]he additional limitations in Plaintiff's RFC limiting him to [unskilled] work that does not involve reading or writing fails to account for his moderate limitations in concentration, persistence, or pace."], adopted March 23, 2016 (unpublished).  The ALJ's limitation as to the reading of written instructions is based on limitations with respect to the complexity of the work, and not based on Plaintiff's ability to stay on task.  See Mascio, 780 F.3d at 638; Straughn v. Colvin, No. 1:14CV200, 2015 WL 4414275, at *4 n.5 (M.D.N.C. July 20, 2015) [reasoning the ALJ "did not address how the RFC's limitation to 'simple, routine' tasks addressed his finding of 'mild limitations with concentration, persistence or pace.' Thus, it appears that the ALJ's decision may also run afoul of the recent decision in Mascio"] (citation and quotation omitted); Salmon v. Colvin, No. 1:12CV1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) [noting that "the Fourth Circuit made clear that an ALJ does not account for a claimant's limitations in concentration, persistence,

---

⁹(...continued)
Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. Limitations in concentration, persistence, or pace are best observed in work settings, but may also be reflected by limitations in other settings. In addition, major limitations in this area can often be assessed through clinical examination or psychological testing. Wherever possible, however, a mental status examination or psychological test data should be supplemented by other available evidence.
****
In work evaluations, concentration, persistence, or pace is assessed by testing your ability to sustain work using appropriate production standards, in either real or simulated work tasks (e.g., filing index cards, locating telephone numbers, or disassembling and reassembling objects). Strengths and weaknesses in areas of concentration and attention can be discussed in terms of your ability to work at a consistent pace for acceptable periods of time and until a task is completed, and your ability to repeat sequences of action to achieve a goal or an objective.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3).



and pace by restricting the hypothetical question to simple, routine, tasks or unskilled work."] (citations and quotations omitted).

As noted, the Fourth Circuit explained that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Mascio, 780 F.3d at 638. That may be particularly important here, as the jobs identified by the VE that Plaintiff could perform (based on the ALJ's hypothetical)[10] both appear to be production type jobs, and when asked by Plaintiff's attorney if Plaintiff would be able to perform those jobs if he had to take as many as four unscheduled breaks during the workday, the VE indicated that he would not. (R.p. 142).

While it may be that the ALJ will find, based on the evidence and facts of this case, that Plaintiff's moderate impairment in being able to concentrate and stay on task would not affect his ability to perform the work identified in the decision, see Mascio, 780 F.3d at 638 [noting that the ALJ may be able to explain why a moderate concentration, persistence, or pace limitation did not translate into a limitation in the RFC ("[f]or example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the [VE]"), but finding that remand was appropriate because the ALJ gave no explanation]; he did not make that determination or finding in his decision,[11] and this Court may not do so in the first instance. Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) [Court cannot affirm a decision on a ground that the ALJ did not himself invoke

---

[10]Assembler (DOT Title 739.684-094) and machine tender (DOT Title 731.685-014). (R.p. 140).

[11]As noted, the ALJ did not have the benefit of the Fourth Circuit's Mascio analysis when making his findings, since that case was decided after the decision in this case.



in making the decision]. Therefore, this case must be reversed and remanded for consideration of Plaintiff's RFC in compliance with Mascio.

### III.

With respect to Plaintiff's remaining claims of error, on remand the ALJ will consider and re-evaluate the evidence in toto as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo].

### Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), **IT IS ORDERED** that the decision of the Commissioner is **reversed**, with **remand** to the Commissioner for reevaluation of the evidence as set forth hereinabove, and for such further administrative action as may be necessary. See Shalala v. Schaefer, 509 U.S. 292 (1993).

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

July 5, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

